## DeLeo v. Kane

*S. B. Brodsky* and *Meyer, Lasch, Hankin & Poul*, for plaintiff.

*M. L. Ciccarelli*, for defendants.

GOLD, P. J., November 21, 1962.—This case comes before us on plaintiff's petition, pursuant to Pa. R. C. P. 4019, for an order to compel defendants, Kane and Cody, to furnish information to plaintiffs . . .

### III

Plaintiff seeks to compel Officer Gerald Baker, the first police officer to arrive at the scene of the accident, to answer questions as to what he observed and the names of the other officers who are possible witnesses. The original observations made by Officer Baker were not made in anticipation of litigation. See Abel v. Philadelphia Suburban Trans. Co., 9 D. & C. 2d 737 (1956).

It is hereby ordered and decreed that Officer Baker shall answer the questions on the following pages and lines of the deposition. . . .

### IV

Cody, one of defendants in the subject suit, was, at the time of the accident, an off-duty park guard. The accident occurred on May 26, 1962. On May 28, 1962, the Law Department of the City of Philadelphia notified the Accident Investigation Division (AID) of the Police Department of the possibility of a suit against the City and requested that a careful investigation be made. Plaintiffs here seek information and reports of Officer Joseph Flynn and Captain Cunnane of the AID, both of whom, upon the advice of the Law Department, refused to answer vital questions alleging that Pa. R. C. P. 4011 (d) prohibits the discovery of the information requested.

The questions asked of the AID personnel to which objections have been filed will be classified and considered seriatim. The first group of questions concerns

the identity of possible witnesses. Plaintiff asked of Captain Cunnane:

Who were the officers engaged in the continuing investigation?

Did any officer examine the scene of the accident?

Did any officer examine the vehicles involved in the accident?

Did any officer compare the paint on the vehicles?

In the same classification, Officer Flynn was asked whether he had talked with other people in order to determine the events leading up to the accident; whether any other officers besides himself took part in the investigation; who removed decedents from their car. Identity and whereabouts of witnesses are expressly exempted from the limitation of Rule 4011(d). Therefore, the name and address of any witness who would testify in relation to the subject matter of the suit should be disclosed. We appreciate that some of the questions do not expressly request the names or whereabouts of witnesses, but the general import of the questions, in our opinion, implies such a request. We, therefore, allow the above questions and direct that they be answered: Bradley v. Philadelphia Transportation Company, 87 D. & C. 548 (1954).

### V

The second category of questions address themselves to physical observations made by AID Officer Flynn. Flynn was asked whether there was any foreign paint on any of the cars; whether he had compared the position of damages on the cars; whether he talked with defendants or took statements from them; whether any relationship between the defendants had been established.

The City of Philadelphia has the duty to investigate all motor vehicle accidents pursuant to the mandate to the police department set forth in section 5-200(a)

of the Charter. The ultimate purpose of these investigations is to effectuate the enforcement of traffic laws, to promote greater community safety and to accumulate statistical information. Finally, as an incidental purpose, the reports are made available to the Law Department of the City for use should litigation arise. Two conclusions have been reached from the foregoing. First, ordinary AID investigations, even of accidents in which City vehicles are involved, are part of the City's regular business: Leto v. City of Philadelphia, 19 D. & C. 53 2d (1959). Accordingly, reports made in the regular course of the City's business cannot have been expressly prepared for litigation. Secondly, the incidental use of AID reports in litigation cannot impart to them the character of being made "in anticipation of litigation": Hirsch v. City of Philadelphia, 17 D. & C. 2d 461 (1958).

It is essential to note that if the AID makes a more extensive investigation than the normal or usual report, not as a function of the police department, but as an investigative arm of the City, the latter report would probably fall within the category of an "anticipation of litigation report." Thus, in Abel v. Philadelphia Suburban Trans. Co., 9 D. & C. 2d 737 (1956), where discovery was sought of a police investigation of an accident in which plaintiff, an officer, was injured, the court ordered the police to make available the diagrams, pictures and names of witnesses, but permitted the remainder of the report to be withheld because it was more extensive than a routine report.

The AID report of the accident which gave rise to the present case does not contain the information which such reports normally encompass. The information which should have been part of the AID report has been given to the Law Department, which in turn, now claims that the information was secured "in anticipaiton of litigation." Captain Cunnane stated in the oral

depositions that in an ordinary investigation, a detailed report is made of interviews of witnesses and parties, and of the physical examination of the vehicles. In addition, the captain stated that if a search of the vehicles or their occupants is indicated by the nature of the accident, the findings of such a search would also be fully reported.

We, therefore, hold that the answers which the above questions solicit were not secured for the first time in anticipation of litigation and direct that they be answered.

VI

The subject accident occurred on May 26, 1962. On May 28, 1962, the Law Department of the City of Philadelphia first notified Captain Cunnane of the AID of the *possibility* of a suit against the City and requested that a careful investigation be made. It is true in this case as it was in the Hersch case, supra, that *mere potential use* of AID reports does not stamp them with the character of reports prepared "in anticipation of litigation."

Under this doctrine, those portions of the AID report made prior to May 28, 1962, do not fall within the protection of Rule 4011(d), and must be produced. Likewise, the City is also ordered to produce those portions of any report made after May 28, 1962, which normally would have been included in an ordinary AID report.

Finally, further interrogatories are to be taken if there is any question concerning the scope of information which should have been included in the ordinary report. In arriving at this conclusion, we are mindful of the state of the pleadings, particularly the answer of the City, which denies all liability of the City for the reason that park guard Cody was not the agent of the City at the time he participated in this unfortunate and tragic accident.